**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

SOCIAL MARKET ANALYTICS, INC.    )
    Plaintiff    )
    )
v.    )
    )    Case No. 1:21-cv-6029
DOUGLAS HOPKINS.    )    Judge Valderrama
    Defendant.    )

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR CONTEMPT
ORDER

Now comes, the Defendant, DOUGLAS HOPKINS, by his attorneys and in Response
Opposition to the Plaintiff, SOCIAL MARKET ANALYTICS, INC.'s, Motion for Contempt and
Motion for Leave to Conduct Expedited Discovery, states as follows:

1. Plaintiff's Motion accuses Defendant of intentionally and blatantly refusing to

    comply with a Temporary Restraining Order entered on or about November 17, 2021

    ("TRO"). This accusation is patently false, as is sworn to in the attached Certificate of

    Compliance. Defendant has taken immediate and comprehensive steps to remove the

    alleged confidential materials from his possession and control as is further detailed

    below:

    a. In the face of a seven-day order requiring Defendant turn over any and all
       electronic devices containing SMA materials to a digital forensic vendor, which
       only really allowed for six business days to comply because of the Thanksgiving
       Holiday, Defendant made all of his best efforts to comply by engaging in the
       following acts; gathering his digital devices that could have contained any
       reference to SMA information and turning them over to a third-party forensic
       vendor [add name of vendor] that is well-experienced and well-apprised in the
       matters and issues that pertain to disputes of this nature, and obtaining a receipt
       demonstrating the devices that have been turned over. Defendant turned over all
       of his personal electronic devices that could have contained any information
       subject to the TRO. Further and pursuant to ongoing and protracted negotiations
       with SMA, Hopkins has deleted all SMA information from his personal devices
       and downloaded that information on to a removable thumb drive to comply with

1

his contractual obligations not to possess alleged SMA confidential information. The thumb drive is not in Defendant's possession and placed in the possession and control of one of his attorneys to be used solely for litigation purposes, as communicated to SMA's counsel prior to SMA filing its complaint and TRO. Notably, the TRO does not require that Defendant turn over the devices to a particularly named vendor or that he confer with SMA's counsel before turning the materials over, but just that he remove the materials from his personal possession and control and he has done just that;

b.  Defendant provided the digital forensic vendor with information about his two personal email addresses at issue–a Gmail account and an AOL account–so that later when search terms were agreed upon the vendor would be ready to run the agreed-upon search terms immediately. The TRO required deposit to a third-party and not a vendor specifically chosen by Plaintiff;

c.  Also pursuant to the TRO, Defendant reviewed the forensic protocol and Plaintiff's 181 overly broad search terms and agreed to approximately 34 of them while needing more explanation on the relevance of the rest which explanation has not been provided by Plaintiff's counsel;

d.  Defendant honored and respected the spirit and the instructions in the TRO to the best of his ability given the short time frame and constraints of the holiday and his attorney's unavailability.

e.  Notably, whatever alleged confidential information Defendant accessed during the term of his employment, he did so solely for purposes of fulfilling his employment responsibilities as Head of Sales at SMA. Defendant has not used such information for any other purpose. There is not now and never has been any risk that SMA's alleged confidential information was improperly used by Defendant, notwithstanding that SMA has not taken steps to maintain the confidentiality of such alleged confidential information, as use of personal email accounts, such as Gmail, by SMA employees is prevalent. Indeed, Defendant was asked by SMA to use his Gmail account to create a Google document with alleged SMA confidential information for use at weekly sales meetings.

2.  Although Defendant was represented by counsel during pre-litigation negotiations, he had not yet retained the same counsel at the time the TRO notice had been served and in fact, just accomplished his representation agreement as of the date of this filing. Given that he was not represented by the same attorneys that had previously communicated with SMA's counsel, there was no authorization to accept service of summons. Defendant should not be penalized for not having yet achieved a solid and binding attorney/client relationship and the nature and extent of the parties' attorney client relationships is given the strictest privilege, which renders all such matters not

2

subject to Plaintiff counsel's information, conjecture or criticism. Defendant has not evaded service of summons.

3. Counsel Babbitt was only recently called by Defendant's existing attorneys because of the inherent emergent nature of the TRO. She was called upon to assist Hopkins original two attorneys' need for assistance as they were both indisposed, one out of the country and another because of a spousal illness requiring hospital care. Ms. Babbitt, although not yet having achieved an attorney/client relationship, jumped in to attempt reasonable communications with opposing counsel, assist in compliance with the TRO, and to provide a source of legal work in the immediacy of the legal issues at hand. Not only did Ms. Babbitt attempt email communication with SMA's attorney, Kristi Nelson, she sent a proposed draft Certificate of Completion to Ms. Nelson within approximately five days of the entry of the order so that Ms. Nelson would see that Defendant had made his best attempts to comply with the TRO. Ms. Babbitt also hoped that providing such information to SMA's counsel would avoid further unnecessary litigation or motion practice, given that Defendant has never used such alleged confidential information for any other purpose than to fulfill his employment responsibilities as Head of Sales at Plaintiff SMA. Ms. Babbitt also suggested that she and Ms. Nelson verbally communicate by telephone, which telephone call occurred on or about November 24, 2021. In all communications with Ms. Nelson, Ms. Babbitt assured Ms. Nelson that her client's alleged trade secret information had been removed from the Defendant's possession and control as the TRO required and that information or details of this matter could be further presented in a matter of days but that given the holiday and family emergency it was simply impossible to answer all of

3

her questions immediately. Ms. Babbitt also urged Ms. Nelson to set a date for conferring on the protocol/email search term issues, as required by the TRO but Ms. Nelson refused, insisting instead that Mr. Hopkins was not in compliance with the TRO even though she had been shown a draft of the compliance certificate. In all of the communications, Ms. Babbitt tried to express that in this situation professional courtesy was required, since everyone was doing their best and the nature of the timing was such that waiting a few more days for detailed information could not damage Plaintiff, as all of the alleged information was out of Defendant's possession and control. Ms. Nelson, and not Ms. Babbitt was unreasonable in filing this Motion for an order of Contempt because Ms. Babbitt made all reasonable efforts to cooperate and Ms. Nelson, made none. Indeed, Ms. Nelson, a shareholder in Plaintiff SMA who stands to benefit from depriving Defendant of over a million shares in Plaintiff after fabricating a basis for wrongful terminating Defendant, has been unwilling to negotiate in good faith before or after the filing of SMA's complaint and TRO. Attaching Ms. Babbitt's letter and draft Certificate of Compliance discredits Ms. Nelson's position that Defendant has failed to comply with the TRO, failed to attempt to cooperate, and failed to take this matter seriously.

4. There are no actual or potential damages from Defendant's actions because he has removed all materials requested from his immediate possession and control and has never used such alleged confidential information for any purpose other than to fulfill his employment responsibilities as Head of Sales at Plaintiff SMA.

5. A civil contempt order requires intentional action and a concrete showing of damage, otherwise it must be denied. *Goluba v. School Dist. of Ripon*, 45 F.3d 1035 (7th Cir.

4

1995). In this case Defendant has made reasonable efforts to comply with the TRO, his attorneys have made reasonable efforts to confer with opposing attorneys and there are no damages.

6. Further, Plaintiff's request for immediate discovery efforts are not necessary here because Defendant intends to file a counter-claim against Plaintiff and others and undertaking immediate discovery will cause duplicative and costly and unnecessary discovery expenses, particularly given that all information and devices subject to the TRO materials have been taken out of Defendant's possession and control.

*s/ Carol Coplan Babbitt*
One of Plaintiffs' Attorneys

Carol Coplan Babbitt
Law Offices of Carol Coplan Babbitt
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 435-9775